UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JKIS INVESTMENTS LLC, an Illinois limited liability company, | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) |
| v. | ) ) Case No. 4:22-cv-04126-SLD |
| AMGUARD INSURANCE COMPANY, | ) ) ) |
| Defendant/Counter-Plaintiff. | ) ) |

ORDER

AmGUARD Insurance Company ("AmGUARD") asserts that certain damage to the roof and interior of the Quality Inn & Suites Hotel located at 6910 27th Street, Moline, Illinois ("the Hotel") is not covered under the Businessowner's Policy JKBP126353 ("the Policy") that it issued to JKIS Investments LLC ("JKIS"). Pending before the Court are AmGUARD's Motion for Summary Judgment on its Amended Counterclaim for Declaratory Judgment and on JKIS'[s] Complaint ("Motion for Summary Judgment"), ECF No. 34, Motion to Strike "Sham" Declaration of Jonath[a]n Silveri Submitted with Plaintiff's Resistance to AmGUARD's Motion for Summary Judgment ("Motion to Strike"), ECF No. 40, and Motion for Leave to File *Instanter* Reply Brief in Further Support of Motion to Strike "Sham" Declaration of Jonath[a]n Silveri Submitted with Plaintiff's Resistance to AmGUARD's Motion for Summary Judgment ("Motion for Leave to File Reply"), ECF No. 45. For the reasons that follow, the Motion for Summary Judgment is GRANTED and the remaining motions are MOOT.

1

## BACKGROUND[1]

The Court recites only the information necessary to resolve the pending motions.[2] JKIS—a limited liability company formed in 2017 with three members: Jonathan Silveri ("Silveri"), the managing member; Iraida Silveri; and Kalyan Vallakati—purchased the Hotel in 2018. JKIS purchased from AmGUARD the Policy, which was in effect from March 4, 2020 to March 4, 2021. Broadly, the Policy obligated AmGUARD to "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss," where "Covered Causes of Loss" included "[r]isks of direct physical loss," with certain exclusions and limits. Policy 0075–76,[3] Mot. Summ. J. Ex. B, ECF No. 34-1 at 17–139. Coverage was also tied to a deductible—the Policy provided that AmGUARD would only pay for loss or damage "as a result of one occurrence" once "the amount of such loss or damage exceed[ed] the applicable Deductible." *Id.* at 0054. The applicable deductible relevant here is $5,000. *See id.* at 0006 ("Property Deductible: $5,000"). In return for AmGUARD's coverage obligation, the Policy imposed upon JKIS certain duties, including the duty to provide AmGUARD with "prompt notice of . . . loss or damage." *Id.* at 0095.

On August 10, 2020, the Quad Cities area was affected by a storm of powerful winds exceeding seventy-five miles per hour ("the Derecho"). At some point in November 2020, JKIS first observed water leaking from the Hotel's interior ceilings onto some carpets—JKIS

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, this factual background is drawn from AmGUARD's statement of undisputed material facts, Mot. Summ. J. 2–11, JKIS's response thereto and its statement of additional material facts, Resp. Mot. Summ. J. 3–30, ECF No. 37, and AmGUARD's reply thereto, Reply Mot. Summ. J. 1–24, ECF No. 46.

[2] The parties vigorously dispute many other issues in this case, but as demonstrated below, resolution of those disputes is unnecessary. For example, the Court need not decide whether Jonathan Silveri, as a matter of law, intentionally made a material misrepresentation regarding when a white thermoplastic polyolefin membrane was affixed to the Hotel's roof, *see, e.g.*, Mot. Summ. J. 12–16, nor decide which expert to believe regarding the cause of the damage and therefore whether certain exclusions in the Policy preclude coverage, *see, e.g., id.* at 16–20.

[3] Citations to the Policy utilize the numbers affixed to the bottom-right corner of each page.

suspected the leaks were caused by the Derecho because it may have damaged the Hotel's roof. JKIS engaged Renee Jiminez, a roofing contractor, to perform minor repairs on the Hotel's roof. JKIS did not notify AmGUARD of the loss or damage nor the repairs in November 2020. Months later, in March 2021, JKIS noticed more interior leaks following some rain. JKIS again engaged Jiminez to perform minor repairs on the Hotel's roof. Again, no notice was provided to AmGUARD. That same month, JKIS retained Storm Recovery Roofing and Siding ("SRR") to inspect the Hotel's roof.[4] Silveri testified that he did not appreciate the full extent of the assertedly Derecho-caused damage until SRR's inspection. JKIS submitted a claim under the Policy regarding the Hotel's roof on April 8, 2021—nearly eight months after the Derecho.

AmGUARD's third-party claim administrator sent a disclaimer letter to JKIS in October 2021, informing it that there was no coverage under the Policy for the Hotel's roof's damage. Although issues of prompt notice were not discussed in the disclaimer letter, the third-party claim administrator stated that the letter did "not constitute a waiver of any policy provisions or defenses" and that AmGUARD "reserve[d] their rights to amend, alter or supplement th[e] letter should information become known in the future that would affect its content." Oct. 7, 2021 Letter from Raphael & Assocs. to JKIS 5, Mot. Summ. J. Ex. G, ECF No. 34-2 at 1–7.[5]

---

[4] JKIS disputes that SRR conducted its inspection in March 2021, asserting that the inspection occurred in either March or April 2021. Resp. Mot. Summ. J. 4. JKIS fails to cite any evidence in support of its disputation of this fact, so the Court deems this fact to be undisputed. *See* Civil LR 7.1(D)(2)(b)(6); *Kibler v. United States*, 46 F. Supp. 3d 844, 847 (C.D. Ill. 2014) ("A party responding and disputing the movant's statement of undisputed material facts must support its own factual allegations with citation to evidence in the record.").

[5] JKIS advances the same evidentiary objection to nearly every document upon which AmGUARD seeks to rely, arguing that the documents are "inadmissible hearsay and lack[] any authenticating foundation." *See, e.g.*, Resp. Mot. Summ. J. 8; *see also id.* at 8 n.2 ("For purposes of summary judgment '[i]f the evidence is inadmissible hearsay, the courts may not consider it.'" (alteration in original) (quoting *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016))). JKIS often fails to develop any argument for these objections—the Court could find that these undeveloped arguments constitute waiver. *See, e.g.*, *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived . . . ."). Here, finding waiver is unnecessary because JKIS's evidentiary objection to the disclaimer letter fails on its merits. Admissibility is based upon whether the evidence would be admissible at trial, not whether the evidence would be admissible in its current form as a summary judgment exhibit. *See, e.g.*, *Cairel*, 821 F.3d at 830 ("To be considered on summary judgment, evidence must be admissible at trial, though the form produced at summary judgment need

JKIS sued AmGUARD in state court on August 9, 2022, asserting that AmGUARD had breached its contract with JKIS by failing to provide coverage under the Policy and that AmGUARD had vexatiously denied liability and refused to settle in violation of 215 ILCS 5/155.[6] Compl. ¶¶ 1–19, Not. Removal Ex. A, ECF No. 1-1 at 1–5. AmGUARD timely removed to this Court on September 7, 2022, invoking the Court's diversity jurisdiction.[7] AmGUARD's Answer asserted many affirmative defenses, including that JKIS's claims were barred due to the Policy's "Duties in the Event of Loss or Damage provision." Answer & Countercl. 9, ECF No. 6. AmGUARD also asserted a counterclaim for a declaratory judgment that it did not owe JKIS coverage under the Policy. *Id.* at 10–16. AmGUARD was allowed to file an Amended Counterclaim, premised upon its assertion that it had "recently discovered evidence that confirm[ed] JKIS committed fraud, intentionally concealed and/or misrepresented facts in connection with its claim for insurance coverage." Mot. Leave File Am. Countercl. ¶ 3, ECF No. 16; *see generally* Dec. 15, 2023 Order (Hawley, M.J.), ECF No. 20.

---

not be admissible." (quotation marks omitted)). And the Court considers the disclaimer letter solely for purpose of JKIS's state of mind—knowledge that AmGUARD was denying coverage under the Policy—not for the truth of what JKIS assumedly reads the disclaimer letter to assert, namely that coverage under the Policy was indeed unavailable. *See* Fed. R. Evid. 803(3) (hearsay exception for then-existing mental condition).

[6] 215 ILCS 5/155 provides for additional remedies in cases "wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable."

[7] "AmGUARD is a Pennsylvania corporation with its principal place of business in Wilkes-Bane, [sic] Pennsylvania, and therefore is a citizen of the State Pennsylvania." Answer Am. Countercl. ¶ 12, ECF No. 22; *see also* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). JKIS initially declined to specify the citizenship of each of its members. *See* Answer Am. Countercl. ¶ 15 (JKIS "affirmatively states no member of JKIS is a citizen of the State of Pennsylvania"). The Court noted that this sort of assertion is insufficient to establish diversity jurisdiction within the Seventh Circuit. *See* Feb. 26, 2025 Text Order ("[C]ourts 'do not blithely accept assurances along the lines of "no one on our side is a citizen of the opposing litigant's state."'" (quoting *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020))). At the Court's direction, the parties engaged in limited jurisdictional discovery, *see* Mar. 7, 2025 Text Order, and AmGUARD filed an Amended Notice of Removal, ECF No. 48, establishing that, at the time this case was removed to this Court, Silveri was a citizen of Illinois, Iraida Silveri was a citizen of Illinois, and Kalyan Vallakati was a citizen of Maryland, such that JKIS was a citizen of Illinois and Maryland, *see* Answer AmGUARD's Jurisdictional Interrog., Am. Not. Removal Ex. A, ECF No. 48-1; *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members."). Because the parties are completely diverse and the amount-in-controversy exceeds $75,000, Am. Not. Removal ¶¶ 5–19, the Court's diversity jurisdiction is secure, *see* 28 U.S.C. § 1332(a)(1).

AmGUARD moved for summary judgment on July 12, 2024. Mot. Summ. J. 1. JKIS's response to AmGUARD's summary judgment motion includes a declaration from Silveri, wherein he explains why he had previously misstated when a white thermoplastic polyolefin membrane ("TPO membrane") was installed on the Hotel's roof and why, during his Rule 30(b)(6) deposition on JKIS's behalf, he denied knowledge of any non-routine-maintenance work that had been performed on the Hotel's roof after JKIS purchased the Hotel in 2018 but prior to the August 10, 2020 Derecho, *e.g.*, that the TPO membrane was installed after JKIS purchased the Hotel. *See generally* Silveri Decl., Resp. Mot. Summ. J., ECF No. 37-1 at 81–83; *see also* Def.'s First Excerpt Silveri Dep. 43:16–23, Mot. Summ. J. Ex. A, ECF No. 34-1 at 1–16 (denying that any roofing work was done on the Hotel's roof "outside of regular . . . routine maintenance"). AmGUARD seeks to exclude Silveri's declaration as a "sham affidavit," *see generally* Mot. Strike, and seeks leave to file a reply in support of the Motion to Strike, *see generally* Mot. Leave File Reply. AmGUARD was given leave to include excess pages in its summary judgment reply to account for issues related to Silveri's declaration. Oct. 7, 2024 Text Order.

## DISCUSSION

I. **Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant in a summary judgment motion bears the initial burden of production; it must point the court to the materials in the record that "demonstrate the absence of a genuine issue of material fact" for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant

discharges its initial burden, the burden shifts to the nonmovant to "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

The court must "constru[e] the record in the light most favorable to the nonmovant," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute is insufficient to defeat a motion for summary judgment," *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quotation marks omitted), as "there must be evidence on which the jury could reasonably find for the [nonmovant]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II. Analysis

### A. Motion to Strike

AmGUARD moves to strike Silveri's declaration, submitted as part of JKIS's summary judgment response, as a sham affidavit. *See generally* Mot. Strike. JKIS opposes, arguing that Silveri's declaration satisfies exceptions to the sham-affidavit doctrine. *See generally* Resp. Mot. Strike, ECF No. 42. AmGUARD seeks to file a reply explaining why the declaration does not satisfy those exceptions. *See generally* Mot. Leave File Reply; Reply Br. Mot. Strike, Mot. Leave File Reply Ex. A, ECF No. 45-1. Generally, motions to strike are disfavored in the context of summary judgment motion practice. *See, e.g.*, *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 830 (C.D. Ill. 2010) (expressing confidence in a court's ability to "rely only on admissible evidence and proper and accurate statements of the facts"

when resolving a summary judgment motion). Here, as will be explained below, AmGUARD is entitled to the entry of summary judgment in its favor even if the factual averments of Silveri's declaration are considered, such that the Court need not resolve AmGUARD's Motion to Strike. This means that considering AmGUARD's proposed reply is also unnecessary. *Cf. Carnes v. HMO La., Inc.*, No. 4:22-cv-04179-SLD-JEH, 2023 WL 6020534, at *2 (C.D. Ill. June 26, 2023) (noting that leave to file a reply may be granted if the reply "would be helpful to [the court's] disposition of the motion" or if it would further "the interest of completeness" (quotation marks omitted)), *aff'd*, 114 F.4th 927 (7th Cir. 2024). Both the Motion to Strike and Motion for Leave to File Reply are MOOT.

### B. Prompt Notice

AmGUARD asserts that it is entitled to summary judgment because JKIS failed to comply with its duties under the Policy, namely that it failed to give AmGUARD "prompt notice" that the Hotel had been damaged by the Derecho. Mot. Summ. J. 20–21; Reply Mot. Summ. J. 34–35, ECF No. 46. JKIS advances two responses: first, AmGUARD should not be allowed to seek summary judgment on this basis because it is an affirmative defense and AmGUARD's summary judgment motion is only timely insofar as it concerns AmGUARD's Amended Counterclaim; and second, material disputes of fact preclude the entry of summary judgment on this basis. Resp. Mot. Summ. J. 39–41, ECF No. 37.

#### 1. Prompt Notice: Timeliness of AmGUARD's Motion

JKIS's timeliness argument relies upon the Court's prior scheduling orders. It asserts that "November 17, 2023 was the deadline for dispositive motions related to all claims *other than* AmG[UARD]'s Am. Counterclaim," and requests that the Court "strike or otherwise disregard AmG[UARD]'s [motion for summary judgment] with respect to this affirmative defense." *Id.* at

39. JKIS's argument misstates this case's procedural history. When the Court granted AmGUARD leave to file an Amended Counterclaim, it also granted AmGUARD's Motion to Extend Deadline to File Dispositive Motions, ECF No. 17. Dec. 15, 2023 Order 1. The Court did not distinguish between a dispositive motion deadline for the case generally and a dispositive motion deadline for AmGUARD's counterclaim. *See id.* at 8. The parties were also directed to file "a revised proposed discovery plan appropriately limited in scope." *Id.* at 9. That submission set a deadline for "[d]ispositive motions as to Amended Counterclaim," but did not set a different deadline for dispositive motions generally. *See* Am. Disc. Plan Am. Countercl. 2, ECF No. 23. This practice—omitting a generally applicable dispositive motion deadline while proposing a dispositive motion deadline for AmGUARD's Amended Counterclaim—continued in subsequent amended discovery plans. *See* 2d Am. Disc. Plan Am. Countercl. 2, ECF No. 28; 3d Am. Disc. Plan Am. Countercl. 2, ECF No. 32.

When the Court adopted the first Amended Discovery Plan as to AmGUARD's Amended Counterclaim it did indeed set a deadline for "Dispositive Motions as to Amended Counterclaim." Jan. 2, 2024 Text Order (Hawley, M.J.). However, due to additional disputes, the deadline for dispositive motions was extended two more times, and those extensions were not explicitly restricted to AmGUARD's Amended Counterclaim. *See* Apr. 2, 2024 Text Order (Hawley, M.J.) ("Dispositive Motions due by 6/28/2024."); May 30, 2024 Text Order (Hawley, M.J.) ("Dispositive Motions due by 7/12/24."). The Court's deadline for dispositive motions, as set forth in its May 30, 2024 Text Order, was not restricted to AmGUARD's Amended Counterclaim. AmGUARD's Motion for Summary Judgment was filed on July 12, 2024. This filing was timely and satisfied the final dispositive motion deadline of July 12, 2024. *See* May

8

30, 2024 Text Order. The Court finds that its scheduling orders do not preclude AmGUARD from seeking summary judgment on the basis of an affirmative defense.

Even if JKIS's reading of the Court's scheduling orders were correct, the Court would *sua sponte* consider whether summary judgment was appropriate as to both AmGUARD's affirmative defense and JKIS's Complaint. "While not encouraged, a district court can enter summary judgment *sua sponte*, or on its own motion, under certain limited circumstances." *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 461 (7th Cir. 2009) (quotation marks omitted). Generally, "the party against whom summary judgment is entered" must have had "notice and an opportunity to present its evidence." *Id.* at 462. JKIS had notice that AmGUARD was seeking the entry of summary judgment based on this affirmative defense, such that JKIS presented its evidence and arguments in opposition thereto. *See, e.g.*, Resp. Mot. Summ. J. 39–42. Therefore, the Court will consider the parties' arguments on their merits.

### 2. Prompt Notice: Merits of AmGUARD's Motion

The Policy required JKIS to give "prompt notice" of loss or damage, specifically stating:

a. You must see that the following are done in the event of loss or damage to Covered Property:
. . .
    (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
    (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
    (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. . . . However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

Policy 0095. Under Illinois law,[8] a court construing an insurance policy "must ascertain and give effect to the intentions of the parties, as expressed in the policy language." *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 939 N.E.2d 288, 293 (Ill. 2010). "Insurance policy notice provisions impose valid prerequisites to insurance coverage." *Id.*; *see also Farmers Auto Ins. Ass'n v. Burton*, 967 N.E.2d 329, 333 (Ill. App. Ct. 2012) (stating that insurance policy notice provisions "are not merely technical requirements but are conditions precedent to an insurer's contractual duties"). "An insured's breach of a policy's notice clause will preclude the insured's right to recover under the policy." *Breckenridge Apartment Homes, LLC v. Greater N.Y. Mut. Ins. Co.*, No. 16 C 50115, 2019 WL 10248740, at *9 (N.D. Ill. Feb. 19, 2019); *see also Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006) ("Breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy."). Whether notice was given within a reasonable time "generally is a question of fact." *Yorkville Nat'l Bank*, 939 N.E.2d at 293. "However, when there is no controversy as to the facts, the question of what constitutes 'within a reasonable time' becomes a question of law." *Berglind v. Paintball Bus. Ass'n*, 930 N.E.2d 1036, 1044 (Ill. App. Ct. 2010) (quoting *Olivieri v. Coronet Ins. Co.*, 528 N.E.2d 986, 989 (Ill. App. Ct. 1987)); *see also Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, No. 17 C 1561, 2019 WL 3287837, at *4 (N.D. Ill. July 22, 2019) ("If no material facts are in dispute, whether a plaintiff satisfied a notice provision is a question of law that may be resolved on summary judgment.").

JKIS asserts that "questions of fact exist as to whether, under the circumstances, JKIS provided prompt notice to AmG[UARD]," pointing to its arguments about Silveri's lack of sophistication in insurance matters, JKIS's stated justification for the delay in providing notice,

---

[8] The parties do not raise any choice-of-law disputes, such that the Court applies Illinois law as the law of the forum state. *See, e.g., Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009).

10

and an asserted lack of prejudice to AmGUARD. Resp. Mot. Summ. J. 41. However, the questions identified by JKIS do not concern the facts themselves, but rather the legal significance of those facts. The facts relevant to the issue of prompt notice—Silveri's asserted non-sophistication, the Derecho, the noticing of the leaks, the repairs by Jiminez, JKIS's submission of a claim to AmGUARD, JKIS's explanation for the delay in notice, and facts undergirding a potential showing of prejudice to AmGUARD—are not in genuine dispute. The Court finds that the notice issue is amenable to resolution as a matter of law because the relevant facts are undisputed.

Illinois courts assess the reasonableness of delay in providing notice by analyzing five factors: "(1) the specific language of the policy's notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer." *Yorkville Nat'l Bank*, 939 N.E.2d at 293–94; *State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 358 (7th Cir. 2017). "No one factor trumps the others in this totality-of-the-circumstances analysis." *Brumit Servs.*, 877 F.3d at 358 (citing *Livorsi Marine*, 856 N.E.2d at 346). The Court considers each factor in turn.

### a. Specific Policy Language

Here, the Policy states that an insured "must" provide "prompt notice." Policy 0095. Although undefined by the Policy, Illinois courts interpret "prompt notice" to require that the insured give notice to the insurer "within a reasonable time." *See Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, 379 F. Supp. 3d 687, 691 (N.D. Ill. 2019) (citing *First Chi. Ins. Co. v. Molda*, 948 N.E.2d 206, 213 (Ill. App. Ct. 2011)); *cf. Yorkville Nat'l Bank*, 939 N.E.2d at

11

293 ("A policy provision requiring notice 'as soon as practicable' means notice must be given 'within a reasonable time.'"). Some courts find that "the policy language 'does not aid in [the] reasonableness analysis [when] it does not identify a specific time frame for giving notice.'" *E.g.*, *Towne Place Condo. Assoc.*, 2019 WL 3287837, at *5 (alteration in original) (quoting *Yorkville Nat'l Bank*, 939 N.E.2d at 294). "Prompt," if undefined by an insurance policy, sheds little light standing alone. Yet other courts emphasize the mandatory nature of the word "must," finding that the word tends in favor of a finding that sooner is more reasonable than later under a notice provision. *See Cambridge Mut. Fire Ins. Co. v. Shelton*, No. 19 C 7065, 2022 WL 3107598, at *3 (N.D. Ill. Aug. 3, 2022) (collecting cases). The Court finds that the mandatorily phrased Policy language here weighs against finding that JKIS provided prompt notice.

### b. Insured's Sophistication

JKIS asserts that Silveri's testimony "on behalf of JKIS demonstrates JKIS is not sophisticated in insurance matters." Resp. Mot. Summ. J. 41 (citing Def.'s First Excerpt Silveri Dep. 96:1–6). But the testimony JKIS cites to is Silveri's statement that he was "not a roofing expert" and did not know if the damage was "going to be, you know, over our deductible or under." Def.'s First Excerpt Silveri Dep. 96:1–6. "Courts assess sophistication as part of a totality-of-the-circumstances analysis and consider an insured's sophistication in commercial matters generally, not just their sophistication in insurance matters specifically." *Breckenridge Apartment Homes*, 2019 WL 10248740, at *10. The Seventh Circuit found that a high school graduate with some college education was sufficiently sophisticated because he operated his own business for four years, oversaw two employees, and surely had to renew the multiple insurance policies that he had purchased over those years. *Brumit Servs.*, 877 F.3d at 359. Conversely, those who are found to be unsophisticated are individuals like teen drivers who had never

12

purchased their own insurance policies, *Grasso v. Mid-Century Ins. Co.*, 536 N.E.2d 977, 979–80 (Ill. App. Ct. 1989), or uneducated and inexperienced business owners who allowed default to be entered against them before even contacting the insurer, *Berglind*, 930 N.E.2d at 1045–46; *see also id.* at 1045 (noting that the individual "testified that when he receive[d] letters or other documents in the mail that he d[id] not understand, he thr[e]w[] them away").

Moreover, JKIS is the insured, not Silveri himself. Business entities like banks and property-management associations are presumed to be more sophisticated than John Q. Public. *See Yorkville Nat'l Bank*, 939 N.E.2d at 294 ("Yorkville is a bank presumed to be sophisticated in the areas of commerce and insurance."); *Towne Place Condo. Ass'n*, 2019 WL 3287837, at *5 ("[A]s a condominium association that managed almost ninety buildings, Towne Place can be presumed to have dealt extensively with homeowners' insurance and thus to have had at least some degree of sophistication in insurance matters."). Silveri's testimony about deductibles is not enough to conclude that JKIS should be classified as commercially unsophisticated. Silveri is the managing member and general manager of an LLC, he attended franchise trainings and out-of-state conventions related to the hotel industry over the course of two years, and he was "fully involved in the day-to-day operations of the Hotel" in early 2020, *i.e.*, by August 2020. Silveri Decl. ¶¶ 2, 9, 14. While JKIS is not exactly a hotel empire, it is still an insured business that manages multiple employees and navigates a franchise agreement. *See* Def.'s Second Excerpt Silveri Dep. 130:14–135:19, Mot. Strike Ex. B, ECF No. 40-2 (describing duties under JKIS's franchise agreement). Silveri does not need to be an insurance or roofing expert for the Court to find that an LLC which owns and operates a hotel is sufficiently sophisticated in commercial issues such that it can be expected to understand that "must" and "prompt" mean

notice should be provided sooner rather than later. The Court finds that this factor weighs against finding that JKIS provided prompt notice.

### c. Insured's Awareness of Coverage-Triggering Event

Under this factor, courts distinguish between when an accident occurred and when the insured became aware of the damage caused by that accident. *See Huntington Chase Condo. Ass'n*, 379 F. Supp. 3d at 692–93 (concluding that the insurance policy's definition of "occurrence" meant that the obligation to notify the insurer was triggered by "the loss or damage—not the incident that caused the loss or damage"). "[T]he 'awareness' factor concerns whether an insured is aware that an event is covered by the policy or not." *Breckenridge Apartment Homes*, 2019 WL 10248740, at *11. Here, the Derecho occurred on August 10, 2020, JKIS first noticed leaks in November 2020, and JKIS gave AmGUARD notice of the assertedly Derecho-caused damage in April 2021. Def.'s First Excerpt Silveri Dep. 71:8–11, 148:4–10. AmGUARD does not argue that JKIS's duty to provide prompt notice of a potentially coverage-triggering event was triggered in August 2020, instead arguing that the duty was triggered in November 2020. *See* Mot. Summ. J. 21. JKIS implicitly argues that while it was aware of leaks in November 2020, it was not aware of the damage's extent and therefore that a potentially coverage-triggering event had occurred until SRR inspected the Hotel's roof in March 2021. *See* Resp. Mot. Summ. J. 41; *see also* Def.'s First Excerpt Silveri Dep. 97:21–98:3 ("You know, it wasn't until, you know, [SRR inspected the Hotel's roof] that I found out the severity of the damage.").

No evidence in the record suggests that JKIS was aware of the full extent of the damage in November 2020—that subjective awareness is not established until SRR's inspection of the Hotel's roof in March 2021. Although JKIS knew that the Hotel's roof was leaking and

14

attributed that leak to the Derecho, no evidence establishes that, as of November 2020, JKIS knew that the leaks were significant enough to cause over $5,000 in damage, thereby exceeding the Policy's deductible and triggering coverage under the Policy. *See* Policy 0006 (setting the "Property Deductible" at $5,000); *id.* at 0054 ("We will not pay for loss or damage to Covered Property caused by or resulting from a Covered Cause of Loss as a result of one occurrence until the amount of such loss or damage exceeds the applicable Deductible shown in the Declarations or as set forth below."). Perhaps the average hotelier would have had reason to believe that a claim under the Policy was warranted based on the Derecho and leak alone. But viewing the facts in JKIS's favor and this factor in isolation, it weighs slightly in favor of finding that JKIS provided prompt notice because it was not aware of the damage's extent until March 2021. However, as explained below, JKIS's lack of diligence in investigating the loss or damage reduces this factor's value in the totality-of-the-circumstances analysis.

### d. Insured's Diligence in Ascertaining Coverage Availability

"With regard to the insured's diligence in ascertaining whether coverage is available, a lengthy delay in providing notice is not an absolute bar to coverage provided the insured's reason for the delay is justifiable under the circumstances." *Yorkville Nat'l Bank*, 939 N.E.2d at 294. For example, the Illinois Supreme Court found that a delay was justifiable where the insured's agent erroneously informed it that the insurance policy afforded no coverage for the occurrence. *Id.* at 295. Conversely, "[i]nsureds are not diligent when, without justification or excuse, they delay in undertaking an investigation necessary to comply with a notice provision." *Towne Place Condo. Ass'n*, 2019 WL 3287837, at *6. "To operate as an effective excuse for delay . . . lack of knowledge must be without negligence or fault on the part of the person seeking to be excused." *Int'l Harvester Co. v. Cont'l Cas. Co.*, 179 N.E.2d 833, 835 (Ill. App. Ct. 1962). In

*Towne Place*, once the insured knew enough to determine that the property's roof had been damaged and that a storm from a few months earlier may have been the cause, the insured's failure to further investigate for many more months tended in favor of finding that the delay in providing notice was unreasonable. *Towne Place Condo. Ass'n*, 2019 WL 3287837, at *6. Here, by November 2020, JKIS was in the *Towne Place* insured's position—it knew that the Hotel's roof had been damaged, and it attributed that damage to the Derecho. Def.'s First Excerpt Silveri Dep. 71:8–11. JKIS similarly did not inform the insurer of the occurrence until many months later; here, four or five months later.

      JKIS does not have a sufficient justification or excuse for its failure to give AmGUARD notice in November 2020—JKIS was not "without negligence or fault" in November 2020 because it failed to investigate the extent of the assertedly Derecho-caused damage. *See Int'l Harvester Co.*, 179 N.E.2d at 835. Silveri described in detail his recollection of the Derecho, noting both that the Quad Cities lost power and that the winds were so strong that a guest's new camper was blown over and damaged that night. Def.'s First Excerpt Silveri Dep. 61:5–23. In other words, this was a memorably severe weather event. The damage was severe enough to require JKIS to enlist a roofing contractor, Jiminez, to come out and perform repairs in November 2020. *See* Answer Am. Countercl. ¶ 26, ECF No. 22. The record contains no evidence that JKIS took any further steps to ascertain the damage's full extent at that time; for example, it did not seek any quotes regarding what it would cost to fully repair the damage. JKIS instead chose to not investigate the full extent of the damage. *See, e.g.*, Def.'s First Excerpt Silveri Dep. 103:6–8 ("So I waited until spring to, you know, have someone show me the severity of what was really going on."). Silveri asserts that JKIS decided to delay investigating the damage's full extent because contractors would be available in spring and because the hotel

16

business was struggling due to COVID-19-related travel restrictions in November 2020. *Id.* at 102:12–103:8; Pl.'s Excerpt Silveri Dep. 153:14–154:3, Resp. Mot. Summ. J., ECF No. 37-1 at 5–11. If fixing the Hotel's roof was going to be a big expense, Silveri wanted to delay.

These subjective business considerations might make some sense if one considered the cost of repairs solely from the perspective of JKIS's ledger. But JKIS wants AmGUARD to perform its contractual obligation by covering damage assertedly caused by an uncontrollable weather event. *See* Policy 0118 (defining "occurrence" as an "accident"). AmGUARD accepted the coverage obligation in return for JKIS's reciprocal obligation to promptly inform AmGUARD when it became aware of a coverage-triggering event. Rather than act diligently, JKIS chose to not investigate the Hotel's leaky roof for many months. The culpability attendant to JKIS's actions must be viewed in the context of the contract which JKIS seeks to enforce, not seasonal availability of contractors or the sluggish COVID-19 economy. Choosing to remain ignorant was not a reasonable course of action under the terms of the Policy, which required prompt notice and descriptions of damage. *Id.* at 0095.

JKIS, by failing to diligently investigate the extent of the damage in November 2020, formed an erroneous subjective belief that the Derecho had not sufficiently damaged the Hotel's roof to trigger coverage under the Policy. "[A]n insured's subjective beliefs must give way to an objective standard of reasonableness based on all the circumstances." *Brumit Servs.*, 877 F.3d at 361 (quoting *Kerr v. Ill. Cent. R.R. Co.*, 670 N.E.2d 759, 768 (Ill. App. Ct. 1996)). Here, the reasonable insured, knowing that a severe weather event had occurred and suspecting that the weather event had damaged its property's roof to the extent that at least minor repairs were needed, would either: (1) investigate the extent of damage and receive estimates for fully repairing that damage; or (2) perform under its insurance policy by informing the insurer and

17

allowing it to exercise its own rights under the same. JKIS did neither, such that its lack of diligence was objectively unreasonable, and this factor weighs heavily against finding that JKIS provided prompt notice.

e. **Prejudice to Insurer**

JKIS perfunctorily asserts that AmGUARD was not prejudiced by not receiving notice in November 2020. Resp. Mot. Summ. J. 41. AmGUARD responds that it was prejudiced because Jiminez twice performed repairs on the Hotel's roof, implicitly arguing that those repairs altered the roof's condition and frustrated a causal investigation, and because JKIS failed to mitigate its losses by allowing water to continue to leak into the Hotel. Reply Mot. Summ. J. 35.

AmGUARD was plainly prejudiced by JKIS's delay in providing notice. "[A] notice provision 'affords the insurer an opportunity to make a timely and thorough investigation and to gather and preserve possible evidence.'" *Brumit Servs.*, 877 F.3d at 361 (quoting *Barrington Consol. High Sch. v. Am. Ins. Co.*, 319 N.E.2d 25, 27 (Ill. 1974)). "When the goods or property at issue are replaced, destroyed, or otherwise manipulated before the insurer has an opportunity to inspect them, the insurer has been prejudiced." *Huntington Chase Condo. Ass'n*, 379 F. Supp. 3d at 694. After JKIS noticed assertedly Derecho-caused leaks in November 2020, JKIS engaged a contractor to alter the Hotel's roof on two separate occasions, and AmGUARD was not able to even begin investigating JKIS's claim until many months later in April 2021. The delay and repairs altered the Hotel's roof's condition, frustrating the ability to determine whether the leaks were due to shoddy workmanship or the Derecho or even some other unidentified cause. This "significant uncertainty . . . deprived [AmGUARD] of the benefit it expected to receive from the notice provision," including the ability to effectively investigate the claim. *See Brumit Servs.*, 877 F.3d at 362. Further, the Hotel's roof continued to be in a damaged

condition, as evidenced by the recurring leaks in March 2021. The continued leaks undoubtedly increased the costs of repair, also prejudicing AmGUARD. This factor weighs heavily against finding that JKIS provided prompt notice.

In sum, only one *Yorkville* factor conceivably weighs in favor of finding that JKIS provided prompt notice, but only if one ignores JKIS's inexcusable lack of diligence in investigating whether coverage under the Policy was available. The remaining factors all favor finding that JKIS failed to provide prompt notice as a matter of law. A reasonable insured would have further investigated the assertedly Derecho-caused damage—JKIS did not do so, and therefore its failure to give AmGUARD prompt notice precludes it from forcing AmGUARD to foot the bill for repairing the Hotel's roof. AmGUARD is entitled to summary judgment as to JKIS's Count I for breach of contract.

### C. Remaining Claims

Finding that AmGUARD did not breach its contract with JKIS moots consideration of AmGUARD's Amended Counterclaim, which sought a declaration that it did not owe JKIS coverage under the Policy either because JKIS intentionally misrepresented when the TPO membrane was installed or because the damage was not caused by a covered cause of loss. Am. Countercl. ¶¶ 42–70, ECF No. 21. Count II of JKIS's Complaint asserts that AmGUARD vexatiously refused to settle, in violation of 215 ILCS 5/155. *See* Compl. ¶¶ 14–19. In the absence of a valid claim for coverage under the Policy, JKIS's section 155 claim necessarily fails. *See, e.g.*, *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) ("[W]here no benefits are owed under the terms of an insurance policy, a claim of bad-faith denial under 215 ILCS 5/155 necessarily fails."). AmGUARD is entitled to summary judgment in its favor on JKIS's Count II for vexatious refusal to settle as well.

## CONCLUSION

Accordingly, AmGUARD's Motion for Summary Judgment on its Amended Counterclaim for Declaratory Judgment and on JKIS'[s] Complaint, ECF No. 34, is GRANTED, AmGUARD's Motion to Strike "Sham" Declaration of Jonath[a]n Silveri Submitted with Plaintiff's Resistance to AmGUARD's Motion for Summary Judgment, ECF No. 40, is MOOT, and AmGUARD's Motion for Leave to File *Instanter* Reply Brief in Further Support of Motion to Strike "Sham" Declaration of Jonath[a]n Silveri Submitted with Plaintiff's Resistance to AmGUARD's Motion for Summary Judgment, ECF No. 45, is MOOT. The Clerk is directed to enter judgment and close the case.

Entered this 31st day of March, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE